IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01268-EWN-CBS

SCOTT L. HOWARD,
    Plaintiff,
v.

MAJOR ELOY JARAMILLO,
CAPTAIN CHRISTOPHER SERENA,
LIEUTENANT JAMES SALAZAR, and
SERGEANT TOM GREBENC,
    Defendants.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on Defendants' Motion to Dismiss (filed December 14, 2007) (doc. # 33). Pursuant to the Order of Reference dated July 30, 2007 (doc. # 10) and the memorandum dated December 17, 2007 (doc. # 35), this matter was referred to the Magistrate Judge. The court has reviewed the Motion, Mr. Howard's Response (filed March 14, 2008) (doc. # 54), Defendants' Reply (filed April 1, 2008) (doc. # 56), Mr. Howard's Amended Response (filed April 14, 2008) (doc. # 61), Defendants' Reply to Amended Response (filed May 15, 2008) (doc. # 68), the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

Mr. Howard is an inmate of the Colorado Department of Corrections ("CDOC"), currently incarcerated at the United States Penitentiary in Terre Haute, Indiana. (*See* doc. # 58 (noting change of address)). Mr. Howard's claims arise from events and circumstances at the Arkansas Valley Correctional Facility ("AVCF") between February 27, 2006 and October 6, 2006. (*See* Complaint (doc. # 5) at pp. 8, 14 of 22). Defendant Jaramillo was employed as a "Custody/Control" manager at AVCF. (*See* Complaint (doc.

1

# 5 at p. 2 of 22). Defendant Serena was employed as a "Housing Captain" at AVCF. (*See id.*). Defendant Salazar was employed as a "Housing Lieutenant" and Defendant Grebenc was employed as a "Housing Sergeant" at AVCF. (*See id.*).

Proceeding *pro se*, Mr. Howard brings his claims pursuant to 42 U.S.C. § 1983. (See Complaint (doc. # 5) at p. 4 of 22). Mr. Howard has brought 10 claims in which he repeatedly alleges: (1) violation of Colo. Rev. Stat. § 24-34-601, (2) violation of the equal protection clause of the Fourteenth Amendment, and (3) deliberate indifference to a substantial risk of serious harm in violation of the Eighth Amendment. (*See* Complaint (doc. # 5) at pp. 6-7 of 22). Mr. Howard seeks injunctive relief, nominal damages, compensatory damages, and punitive damages. (*See* Complaint (doc. # 5) at p. 18 of 20).

II.     Standard of Review

Defendants move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted if the court does not have subject matter jurisdiction over the matter. In addressing a jurisdictional challenge, the court need not presume all of the allegations contained in the complaint to be true, "but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. . . ." *United States v. Rodriguez Aguirre*, 264 F.3d 1195, 1204 (10th Cir. 2001) (citation omitted).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she

is entitled to relief.  *Twombly*, 127 S.Ct. at 1965.  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

The court must construe Mr. Howard's Complaint liberally because he is representing himself.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers");  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[a] pro se litigant's pleadings are to be construed liberally") (citations omitted).  However, the court cannot be a *pro se* litigant's advocate.  *Hall*, 935 F. 2d at 1110.  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint");  *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

III. Analysis

A. Liability of Defendants in their Official Capacities under § 1983

Mr. Howard has indicated that he is suing all of the Defendants in both their individual and official capacities.  (*See* docs. # 31 and # 36).  To the extent that Mr. Howard is suing Defendants in their official capacities, he is actually attempting to impose liability on Defendants' employer, the CDOC.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state); *Johnson v. Board of County Com'rs for County of Fremont*, 85 F.3d 489, 493 (10th Cir. 1996) ("an official capacity suit is only another way of pleading an action against an entity of which an officer is an agent") (internal quotation marks and citation omitted).

The CDOC is considered an agency of the State of Colorado. *See* Colo. Rev. Stat. § 24-1-128.5. States and state officials sued in their official capacities are not "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). Further, the Eleventh Amendment bars a suit for damages in federal court against a state or entities considered arms of the state. *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citations omitted). The Eleventh Amendment confers total immunity from suit, not merely a defense to liability. *Ambus*, 995 F.2d at 994 (citation omitted). To the extent that Mr. Howard seeks damages, his claims against Defendants in their official capacities are properly dismissed with prejudice.

B.  Liability of Defendants in their Individual Capacities under § 1983

The Eleventh Amendment does not bar actions for damages against state officials in their individual capacities. *Kentucky v. Graham*, 473 U.S. 159, 164 (1985). To the extent that Mr. Howard is suing Defendants in their individual capacities, personal capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law. *Graham*, 473 U.S. at 165-67.

Individual liability under § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility. *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation) (citation omitted); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (personal participation is an essential allegation in a civil rights action) (citation omitted); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim."). A defendant may not be held liable merely because of his or her supervisory position. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. *Butler*

*v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). A plaintiff must both allege in the complaint and prove at trial an affirmative link between the alleged constitutional violation and a defendant's participation. *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim, affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial").

Defendants Jaramillo and Serena argue that Mr. Howard has failed to plead sufficient facts to demonstrate that they had any personal participation in or any supervisory liability for the alleged violations of his constitutional rights. The court agrees.

The only allegations against Defendants Jaramillo and Serena are that: (1) Mr. "Howard and Mr. Garcia submitted a written request to Jaramillo asking him to review the situation and allow them to share a double-bunked cell;" (2) "Mental Health Clinician James A. Steelman noted the incident and contacted Jaramillo who intervened and stopped Grebenc's move of Howard;" (3) "[o]n or about September 18, 2006, Serena met with Howard regarding the grievance . . . Serena then referred the matter to Salazar;" (4) "[o]n September 27, 2006, Serena did deny Howard's Step I grievance number AV06/07-101;" (5) "Jaramillo did deny Step II of grievance AV06/07-101 as filed;" and (6) "Jaramillo, Serena, and Salazar removed Howard from the AVCF general population on October 5, 2006, and initiated an immediate transfer to another facility." (*See* Complaint (doc. # 5) at pp. 11-14 of 22).

To the extent that Mr. Howard alleges that Defendants Serena and Jaramillo became aware of constitutional violations against him through his administrative filings (*see* Amended Response (doc. # 61) at p. 3 of 9; Complaint (doc. # 5) at pp. 19-21 of 22), they cannot be held liable for actions that occurred prior to their knowledge of such alleged actions. *See McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983) (an individual cannot be held liable in a section 1983 action unless he "participated or acquiesced" in an alleged

constitutional violation). Further, without an allegation of direct responsibility for the alleged violations, Mr. Howard cannot hold Defendants Jaramillo and Serena liable for an alleged constitutional violation on the basis that they denied his grievance. *See, e.g., Downing v. Clinton*, 2006 WL 3054314, *15 (E. D. Wash. 2006) (in granting motion to dismiss, held that defendant's receipt of grievances did not establish her personal participation in decisions relating to medical care); *Johnson v. G.E.O./Lawton Correctional Facility*, 2005 WL 2739212 (W.D. Okla. 2005) (holding that plaintiff failed to state a claim for relief based upon a defendant's participation in the processing of a grievance; *pro se* plaintiff had not demonstrated the required "affirmative link" between the defendant and the underlying constitutional violation); *Coates v. Sheahan*, 1995 WL 430950, *2 (N.D. Ill. 1995) (holding that grievances submitted to a supervisory official are insufficient to establish that official's personal participation in a constitutional violation).[1]

Mr. Howard's allegations against Defendants Jaramillo and Serena do not identify specific actions these Defendants took that gave rise to any constitutional violation. The allegations that Mr. Howard and Mr. Garcia submitted a written request to Defendant Jaramillo and that Defendant Serena met with Howard regarding the grievance do not state a claim for a constitutional violation. Nor do the allegations that Defendant Jaramillo intervened and stopped a move of Howard and that Defendants "Jaramillo, Serena, and Salazar removed Howard from the AVCF general population on October 5, 2006, and initiated an immediate transfer to another facility," actions that Mr. Howard desired, state a claim for any constitutional violation.

Other than conclusorily arguing that Defendants "Jaramillo and Serena actually knew of, approved of, and acquiesced in the violations" (*see* doc. # 61 at p. 3 of 9), Mr. Howard does not allege any specific actions by Defendants Jaramillo or Serena that give rise to a constitutional violation. As Mr. Howard has not pled that Defendants Jaramillo and Serena

---

[1] Copies of these unpublished cases are attached to this Recommendation.

caused or participated in the alleged constitutional violations, there is no basis for holding them individually liable under §1983 and Defendants Jaramillo and Serena are properly dismissed from this civil action for lack of personal participation.

C. Eighth Amendment Claim

Mr. Howard generally alleges in the Complaint that "defendants' actions equate to deliberate indifference to a known substantial risk of serious harm to his health and emotional well-being, in violation of the Eighth Amendment." (*See* Complaint (doc. # 5) at pp. 5-7 of 22; *see also* p. 15 of 22 ("prohibition against mixed-race cell assignments, did place [Howard] at greater risk of harm")). However, Mr. Howard has not argued in support of such a claim. (*See* Amended Response (doc. # 61) at p. 2 of 9 ("aver[ring] that defendants' unwritten policy and actions equate [to] a violation of the Fourteenth Amendment and CRS § 24-34-601" and not mentioning an Eighth Amendment claim).

> [I]t is well settled that the Eighth Amendment requires prison officials to provide humane conditions of confinement, which includes taking reasonable measures to guarantee the safety of the inmates, such as protecting inmates from violence at the hands of other prisoners. A prison official violates this right when the inmate is imprisoned under conditions posing an objectively substantial risk of serious harm, and the official acted with deliberate indifference to the inmate's health or safety. An official exhibits deliberate indifference when he was subjectively aware of the substantial risk posed by the inmate's circumstances and failed to take reasonable steps to ensure his safety.

(*See* "Order Concerning Magistrate Judge's Recommendation" (doc. # 106 in Civil Action No. 06-cv-00282-EWN-CBS, *Howard v. Waide et al.*) at p. 17 (internal quotation marks and citations omitted)).

> In describing the subjective component, the Court made clear a prison official cannot be liable unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. The subjective component is akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from

7

circumstantial evidence.

*Id.* at p. 15 (internal quotation marks and citations omitted).

Mr. Howard "was convicted of numerous Theft charges in various jurisdictions and for Federal tax code violations," and "sentenced to a nine year term of imprisonment for his Colorado convictions." (*See* Complaint (doc. # 5) at p. 8 of 22). "Throughout his entire incarceration within CDOC, Howard has been a target of the 2-11 Crew prison gang which is a white-supremacist security threat group with a well documented history of violence within CDOC. . . solely because he is a homosexual." (*See id.*). Mr. Howard has been physically and sexually assaulted, "extorted, and threatened by members of the 2-11 Crew since December, 2004." (*See id.*). "As a direct result of the attacks sustained, Howard was transferred to the AVCF in February 2006, for his protection from the gang's members." (*See* Complaint (doc. # 5) at p. 8 of 22).

To the extent that Mr. Howard may be asserting an Eighth Amendment claim, he fails to allege a colorable claim. Mr. Howard has not adequately alleged that the Defendants were subjectively aware of a substantial risk posed to him or failed to take reasonable steps to ensure his safety. Mr. Howard alleges that upon his arrival at AVCF he "advised Salazar of his history with 2-11 Crew members as well as the attacks he sustained prior to arrival at the AVCF." (*See* Complaint (doc. # 5) at p. 9 of 22). He has also alleged that he notified Intelligence Officer Lieutenant Lucero, Mental Health Supervisor Ybarra "to the circumstances surrounding his transfer." (*See id.* at p. 8 of 22). Mr. Howard has not alleged that Defendants Jaramillo, Serena, or Grebenc were aware of the circumstances of his transfer to AVCF or the history of his treatment by gang members of the 2-11 Crew. Nor has Mr. Howard alleged that Defendant Salazar was aware of any substantial risk of serious harm to him at AVCF.

Mr. Howard's allegations do not suggest any imminent, substantial risk of harm to him. Soon after his arrival at AVCF Mr. Howard "realized that he was, in fact, surrounded

8

by 2-11 Crew members.  (*See* Complaint (doc. # 5) at p. 9 of 22).  He alleges that he suffered generalized "anxiety/stress" and sought to change cells.  (*See id.*).  Mr. Howard alleges that he "suffered a panic attack" on one occasion when he found "known 2-11 Crew members lounging on [his] bunk and property box, watching his television." (*See* Complaint (doc. # 5) at p. 10 of 22).  According to his allegations, Mr. Howard's anxiety and panic attacks were caused by the mere presence of purported 2-11 Crew members, and not by any action taken against him.  Mr. Howard alleges that his cellmates were targeted and "faced pressure" from 2-11 Crew members.  (*See* Complaint (doc. # 5) at pp. 10-11 of 22).  Mr. Howard makes no allegations that 2-11 Crew members attempted to harm him.

Mr. Howard alleges only that his requests to change cells and to be housed with particular cellmates were denied.  Mr. Howard alleges that Defendant Grebenc denied his specific requests to share a cell with inmate Holst and with inmate Garcia.  (*See id.* at pp. 10, 11 of 22).  Mr. Howard alleges that his further requests to share a cell with other non-Caucasion inmates were denied.  (*See id.* at p. 11 of 22).  Mr. Howard's grievances address the denial of his request to share a cell with a specific inmate, Anthony Garcia. (*See* Complaint (doc. # 5) at pp. 19, 21 of 22).  Mr. Howard's grievances indicated that based on past incidents that did not occur at AVCF, he does "not feel comfortable with white inmates" and is "unable to trust white inmates." (*See id.*).  Nowhere in his grievances does Mr. Howard indicate that he had been threatened at AVCF or was subject to any immediate substantial harm.  A response to one of Mr. Howard's grievances indicates that his request to share a cell with inmate Garcia was denied "on a case by case basis" that "it was in the best interests of the offenders and the facility not to be housed together." (*See* Complaint (doc. # 5) at p. 19 of 22).  There is simply no allegation that Mr. Howard suffered an objectively substantial risk of serious harm to his health or safety of which Defendants were subjectively aware.

Ultimately, Mr. Howard reported a threat to his life, at which time Defendants

9

"Jaramillo, Serena, and Salazar removed Howard from the AVCF general population on October 5, 2006, and initiated an immediate transfer to another facility." (*See* Complaint (doc. # 5) at p. 14 of 22). Mr. Howard alleges that immediately after he received a threat, Defendants responded by moving him. This allegation does not support a claim for an Eighth Amendment violation. Mr. Howard's Eighth Amendment claim is properly dismissed for failure to state a claim upon which relief can be granted.

D.    Equal Protection Claim

Mr. Howard alleges that Defendants "enforced an unwritten policy that strictly prohibited inmates of different races from sharing a double-bunked cell." (*See* Complaint (doc. # 5) at pp. 4-7 of 22). Mr. Howard alleges that he was affected by this policy when his requests to change cells were denied. (*See* Complaint (doc. # 5) at pp. 10-13 of 22). Howard alleges that the "prohibition against mixed-race cell assignments, did subject him to invidious discrimination on the basis of his race." (*See* Complaint (doc. # 5) at p. 15 of 22).

Discrimination between prisoners on the basis of race violates the Equal Protection Clause of the Fourteenth Amendment. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972) ("racial segregation, which is unconstitutional outside prisons, is unconstitutional within prisons, save for the necessities of prison security and discipline.") (internal quotation marks and citation omitted). *See also Johnson v. California*, 543 U.S. 499, 515 (2005) (where African-American inmate brought suit under § 1983 challenging prison policy of placing new or transferred inmates with cell mates of same race during initial evaluation, Supreme Court held that such practices are subject to strict scrutiny, without deciding whether policy violated Equal Protection Clause).

Even assuming the truth of Mr. Howard's allegations and applying strict scrutiny, prison officials have a compelling interest in protecting inmates from race-based violence,

which can justify separating races in individual cells.  Prison officials "have the right, acting in good faith and in particularized circumstances, to take into account racial tensions in maintaining security, discipline and good order in prisons and jails."  *Lee v. Washington*, 390 U.S. 333, 333-34 (1968).  "Without question, prison safety and security is a legitimate, indeed compelling, penological interest."  *Morrison v. Garraghty*, 239 F.3d 648, 660 (4th Cir. 2001) (citations omitted).  *See also Grutter v. Bollinger*, 539 U.S. 306, 353 (Thomas, J., concurring in part and dissenting in part) (citing *Lee*, 390 U.S. at 334 (indicating that protecting prisoners from violence might justify narrowly tailored racial discrimination)); *Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."); *Pell v. Pecunier*, 417 U.S. 817, 823, 94 S.Ct. 2800 (1974) ("central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves").  Courts "may be expected to recognize the government's countervailing compelling interest in not facilitating inflammatory racist activity that could imperil prison security and order."  *Cutter v. Wilkinson*, 544 U.S. 709, 723 n. 11 (2005) (citations omitted).

Mr. Howard has not alleged that the cell assignments were not related to compelling security interests and nothing in the Complaint permits that inference.  In light of Mr. Howard's allegation that Defendants Grebenc and/or Salazar made the cell assignment decisions, his allegation that Sergeant Rivas, Officer Cunningham, Officer Trujillo, Sergeant Larson, and Case Manager Martinez indicated "that mixed-race cell assignments 'don't happen' unless the inmate is Asian or Native American" (*see id.* at pp. 8-9 of 22) are not sufficient to state an equal protection claim.  All of Mr. Howard's allegations that Defendants Grebenc and Salazar enforced a segregated cell policy are associated with Mr. Howard's requests to share a cell with a particular inmate of his choosing.  (*See* Complaint (doc. # 5) at pp. 10, 11, 14 of 22; Response (doc. # 61) at pp. 1-2 ("His requests to share a cell

with Inmates Kareme Holst and Anthony Garcia were denied solely because Mr. Holst and Mr. Garcia are African-American and Hispanic, respectively.")). Inmates have no right to preferable housing assignments. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"), overruled on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995). Mr. Howard's complaints of racial segregation in cell assignments were answered with a denial that any such policy was applied. (*See* Complaint (doc. # 5) at p. 10 of 22). While Mr. Howard has alleged that his requests for particular cellmates or cells were denied, he has not alleged that any other inmates' cell assignments were based only on racial criteria. Mr. Howard's subjective belief of racial discrimination is insufficient to raise an equal protection claim. Mr. Howard's demand to not be celled with any white inmates creates its own issue of racial segregation. The court concludes that Mr. Howard's allegations regarding cell assignment do not state an equal protection claim. *See Baker v. Smith*, 771 F. Supp. 1156, 1158 (D. Kan. 1991) ("A complaint that contains only conclusory allegations of a deprivation of a constitutional right and thus fails to supply a sufficient factual basis to allow defendants to intelligently prepare a defense fails to state a cause of action and must be dismissed") (citations omitted). *But see Perez v. Personnel Bd. of City of Chicago*, 690 F. Supp. 670, 677 (N.D. Ill. 1988) (to survive a motion to dismiss, plaintiff needed only to set forth sufficient facts to establish that strict scrutiny is warranted; it was for the defendants to raise in their answer the defense that the policy is necessary to serve a compelling state interest and to prove it on summary judgment or at trial).

E.    Colo. Rev. Stat. § 24-34-601

Mr. Howard alleges that "[b]y using inmate race as the determinative factor in making cell/bunk assignments, defendants did violate C.R.S. 24-34-601." (*See* Complaint

12

(doc. # 5) at pp. 6-7 of 22).

If the district court has dismissed all claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). *See also Estate of Harshman v. Jackson Hole Mountain Resort*, 379 F.3d 1161, 1165 (10th Cir. 2004) ("[F]ederal jurisdiction is not mandatory over pendent claims or parties."). Title 28 U.S.C. § 1367(c) "provides conditions where district courts may decline to exercise supplemental jurisdiction, and the Supreme Court repeatedly has determined that supplemental jurisdiction is not a matter of the litigants' right, but of judicial discretion." *Harshman*, 379 F.3d at 1165 (citation omitted).

Here, the court recommends dismissal of the claims over which it could have had original jurisdiction. The interests of judicial economy counsel against retaining supplemental jurisdiction over Mr. Howard's single remaining state law claim when his federal claims are dismissed at an early stage of the litigation. Further, principles of comity suggest that the Colorado County courts will be better suited to adjudicate Mr. Howard's claim raised under Colo. Rev. Stat. § 24-34-601. (*See* Colo. Rev. Stat. § 24-34-603 (2007 Supp.) (providing "[t]he county court in the county where the offense is committed shall have jurisdiction in all civil actions brought under this part 6 . . . ."). The court may properly decline to exercise supplemental jurisdiction over Mr. Howard's single remaining state law claim.

F.   Qualified Immunity

Defendants argue that they are entitled to qualified immunity from Mr. Howard's claims. "The doctrine of qualified immunity provides that [w]hen government officials are performing discretionary functions, they will not be held liable for their conduct unless their actions violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mitchell*, 80 F.3d at 1447 (internal quotation marks and

citations omitted). Whether Defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1229 (2008).

> When [a defendant] asserts a defense of qualified immunity, the plaintiff bears a heavy two-part burden. Initially, the plaintiff must show the [defendant]'s conduct violated a constitutional right: A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant]'s conduct violated a constitutional right? If the [defendant]'s conduct did not violate a constitutional right, the inquiry ends and the [defendant] is entitled to qualified immunity.

*Wilder*, 490 F.3d at 813 (internal quotation marks and citations omitted). *See also Wilson v. Layne*, 526 U.S. 603, 609 (1999) (a court evaluating a claim of qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.") (citation omitted); *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001) ("Once a defendant raises the defense of qualified immunity in the context of a motion to dismiss, a court must first determine whether the plaintiff has asserted a violation of federal law.") (citation omitted).

As the court has concluded in this Recommendation that Mr. Howard has failed to state a claim upon which relief can be granted, Defendants are entitled to qualified immunity. *See Wilder*, 490 F.3d at 815 (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right).

G.  Mr. Howard's Request for Injunctive Relief

Defendants argue that Mr. Howard's transfer from AVCF moots his request for preliminary and permanent injunctive relief. (*See* Complaint (doc. # 5) at p. 18 of 22). Mr. Howard has not specifically responded to Defendants' argument.

The court agrees that Mr. Howard's transfer from AVCF on or about October 6, 2007

(see doc. # 5 at p. 14 of 22; docs. # 15, # 16, # 26, # 43, # 57, # 58 (Notices of Change of Address)) moots his request for preliminary and permanent injunctive relief. *See Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (inmate's claims for declaratory and injunctive relief regarding prison conditions were moot when he was transferred to another facility and was no longer subject to those conditions) (citations omitted); *Prins v. Coughlin*, 76 F.3d 504, 506 (2nd Cir. 1996) (transfer from a prison facility moots an action for injunctive and declaratory relief against the transferring facility because the inmate is no longer located there); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (prisoner's transfer moots his request for injunctive relief against conditions of confinement in facility from which he was transferred); *McKinnon v. Talladega County, Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984) (prisoner's transfer to a different jail moots his claim for declaratory and injunctive relief even when prisoner argues that "there is no assurance that he will not be returned to the [first] jail"). As there is no reasonable expectation that Mr. Howard will be subjected to the challenged conduct again, this is not the type of claim to which an exception to the mootness doctrine applies. *See Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (recognizing exception to the mootness doctrine where there is a "reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party") (internal quotation marks and citation omitted). *See also Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ( "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.").

Accordingly, IT IS RECOMMENDED that Defendants' Motion to Dismiss (filed December 14, 2007) (doc. # 33) be GRANTED and this civil action be dismissed.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 29th day of May, 2008.

BY THE COURT:

   s/ Craig B. Shaffer
United States Magistrate Judge